## WENTWORTH *v* FARMINGTON.

If there be a vacancy in the board of county commissioners, the remaining members have no power to act in laying out a highway; not even to make their report, when all else had been agreed to before the vacancy happened.

By the removal of one of the county commissioners from the county his office *ipso facto* becomes vacant without a declaration by the court.

Petition of Moses S. Wentworth and others for a highway in Farmington. At this term of court, September trial term, 1869, the county commissioners made their report laying out the road prayed for in the town of Farmington. Said report was subscribed by all the commissioners, viz: Joseph F. Lawrence, Andrew Rollins and Uriah Wiggin, and from their report and the other evidence introduced by the parties, it appeared that a former report had been made in favor of establishing this highway by said commissioners, and at the last February term of this court, it was again recommitted to the same board for a new hearing of the case, that the parties in interest were duly notified for a hearing in Farmington on the 15th of March last, and met on that day, that on the motion of said town, an adjournment was had to the 6th of April, for and on account of the depth of snow then upon the ground, and on the 6th day of April the hearing was again adjourned for the same reason to tne 19th of the same April, when the parties again met and had the examination of a new route, as well as the old route, and a final decision was had in favor of the new highway prayed for, and the road laid out, the expense of building said road estimated, and the damages to the land owners were duly assessed, and apportioned also upon the respective towns legally presumed to be interested in the future use of said highway. The costs of the parties was ascertained and settled.

It appeared that afterwards, sometime in May, said Joseph F. Lawrence, the chairman of the board of commissioners, removed to Epping in the county of Rockingham, and has had his domicil there ever since, and that before the removal of said Lawrence, the commissioners made all the necessary minutes for the making up of their report except the certificate of the land damages to the town clerk of Farmington. This certificate was made and signed by all the commissioners on the 11th of August last, at Newmarket, in accordance with the damages to the land-owners duly assessed at the last hearing of April 19, and before the commissioners had parted, and the report, by the aid of counsel, Mr. Small, was thereafterwards finally made up from said minutes, and signed by all the commissioners at their office in Dover, and returned seasonably to this court at this term. At this term, the town of Farmington came into court, and excepted to said report,—

1.—Because of the removal of said Lawrence from Lee to Epping in Rockingham county, whereby he vacated his office as road commissioner of Strafford county.

2.—The land damages were not certified until after the removal of said Lawrence from Strafford county.

3.—Said certificate signed by all the commissioners was dated at Newmarket, a place out of the county.

4.—It was objected that the said report was not made up, and the whole costs not ascertained until after said 11th of August, 1869.

5.—The town moves to set aside said report, because one, or more of said commissioners were not impartial, but were biased in favor of laying out said road before the hearing was had.

Upon the last objection the evidence tended to show that said Joseph F. Lawrence, at the last hearing before the board, and before it commenced, first signified a desire to be excused from sitting in the case, but upon a disussion had upon that point, Lawrence was induced to sit, more especially for the reason, that it would save time and expense incident to the examination of a large number of witnesses, who had been examined at the first hearing of this petition, and had been agreed by the defendants should be, and had been received and treated as in the case. But, in the course of the discussion upon one of the subsequent motions for an adjournment, the evidence in behalf of the town tended to show, that said Lawrence under the influence of a good deal of feeling, said, he wanted to remove out of the county, but he would stay, and sit in that case, if the hearing was had, at any time before *fall*, or before the *snow flew*, using both expressions at different times. The reports, and affidadavits, taken and used in the case, and any matter of record, may be referred to by the counsel in this case.

BELLOWS, C. J. It appears from the case that all the commissioners were present at the hearing, that they agreed to lay out the highway, and actually laid it out, estimated the expense of making it, assessed the damages to land owners, apportioned the cost of making the highway among the towns interested, and ascertained and settled the costs, and nothing remained to be done but to put the results in form in the shape of a report, and return to the town clerk of Farmington a certificate of the land damages. It appears also that they had made all the necessary minutes for making of their report except the certificate of land damages. After all this was done before the report was made and the certificate returned, the chairman of the board removed from the county, and the question is, whether a report made and signed after that, is valid.

All were present at the hearing, and all agreed to the matters to be reported, and under such circumstances we think that a report signed by the two remaining commissioners would have been good if the chairman had remained in office, and refused to sign it. By the Revised Statutes, ch. 1, § 13, it is provided that words purporting to give a joint authority to three or more public officers, shall give such authority to a majority of them, unless otherwise specially declared. At common law where an authority of a public nature is delegated by law to several persons, and they meet to consider and execute it, a majority may decide. *Farwell's petition*, 2

N. H., 124; *Petition of Nashua,* 12 N. H., 428; *Palmer* v. *Conway,* 22 N. H., 148; *Butler* v. *Washburn,* 25 N. H., 256; *Glidden* v. *Towle,* 31 N. H., 165; *Grindley & a.* v. *Barker,* 1 B. & P., 228.

Even if the statute goes no farther than the common law rule, a report signed by the majority under the circumstances of this case, would have been good. According to the case of *Grindley & a.* v. *Barker,* 1 B. & P., 228, before cited, it would have been deemed to be the report of the whole. The real point of the objection is, that at the time when the report was signed, there was a vacancy in the board of commissioners caused by the removal of the chairman from the county; and the general doctrine that in case there be a vacancy in the board, the remaining members cannot act, seems to be unquestionable. *Palmer* v. *Conway,* 22 N. H., 148; *Mitchell* v. *Holderness,* 34 N. H., 209, 214.

The question here, then, is whether this doctrine applies where at the time the vacancy occurred nothing remained to be done but to reduce to writing, and made the formal report of what had already been determined by the whole board.

In *Palmer* v. *Conway,* before cited, it was held that as there were not three members of the board in office at the time, there was no such board as the statute requires, and therefore there could be no action of the majority. In that case, a report laying out a highway had been recommitted to the same board, and a hearing notified, and before the time appointed, one of the commissioners died, but the others went on with the hearing and made several changes in the report; and upon the report being again recommitted, the same two commissioners made further changes; and the report upon full consideration was set aside for want of authority in those commissioners to act. In *Mitchell* v. *Holderness,* before cited, the full board had decided to lay out a road, and made known their decision, and thereupon a motion was made that the town of Plymouth be required to contribute to the expense of making the road, and as one of the commissioners lived in Plymouth, another was appointed in his place; afterwards another member of the board removed from the state, and the petitioners thereupon moved the court, to declare his office vacant, and appoint another in his stead, but the motion was denied; and upon exceptions to the supreme court, this ruling was held to be wrong. The court held, that while unfinished business was pending before the board, it became the duty of the court to pronounce the office vacant, and to fill the vacancy under the statute. The court say that they do not understand that because a board of commissioners have decided to lay out a road, and then proceed to inquire whether other towns should defray part of the expense, they may not upon further investigation, reconsider their original intention to lay the road. That the statute contemplates but one report, and until that is made to the court, commissioners may change it if they think proper. The petition of Nashua, 12 N. H. 425, was for leave to discontinue a highway, and commissioners to whom it was referred, reported in favor of the discontinuance; but as one of the commis-

sioners was a resident of Nashua, the report was rejected; the court holding that a majority could not act, unless the matter was heard and considered by a full board, all of whom were competent to act.

In the case before us, the duties of the commissioners were not fully complied with, when the chairman of the board removed from the county. It is true, that nothing remained to be done but to reduce to writing, and make report of what they had already done and decided; and yet until such report was actually made, the commissioners were at full liberty to modify, or reverse, entirely the decisions they had made. If nothing remained to be done, but some merely ministerial act, then the case might be different; but as it is, we feel obliged, somewhat reluctantly, to hold that the duties remaining to be performed, were substantial in their character, and could not be performed by the two remaining commissioners, after the chairman had vacated his office.

The doctrine of *Mitchell* v. *Holderness*, goes very far in the direction of the views we have expressed; holding that until the report was made, the commissioners may make such changes as they think proper, notwithstanding they had before the vacancy, decided to lay out the road. There are serious inconveniences, we are aware, in this view of the law, and the present case affords an illustration of them, inasmuch as the appointment of a new commissioner, might make it necessary to go through with the investigation again; and so it was understood in *Mitchell* v. *Holderness*. Unless, however, we overthrow the doctrine of the cases cited, that if there is a vacancy in the board, the two remaining members cannot act, we must hold here, that if a vacancy was caused by the removal of the chairman, the others could not make a report. No solid distinction, we think, can be made between the case of *Mitchell* v. *Holderness* and the present case, so far as respects this point; and when the rule is once understood, there will be no serious practical difficulty.

The question then remaining is, whether by the removal of one of the commissioners from the county, a vacancy in the board is *ipso facto* created, without a declaration by the court, that the office is vacant.

The statute of July, 1855, sec. 38, provides that if any juror chosen commissioner, declines to accept, removes from the county, resigns, dies, or becomes insane, or when there is manifest hazard to the public interest, the majority of the judges of the supreme judicial court may declare the office vacant; and in case of vacancy from any cause, the supreme judicial court shall appoint a commissioner to fill it; and it further provides that if any commissioner shall be interested in any petition relating to roads, he shall not serve, but the vacancy shall be filled by any justice of the court of common pleas, or the supreme judicial court, either in term time, or in vacation. Similar provisions are found in the General Statutes, ch. 23, § 7 & 8. In behalf of the petitionees, the defendants, it is urged that the office becomes vacant in the cases enumerated, without any declaration to that effect. That in case of death, it must be so;

and, therefore, it may fairly be inferred, that the same was intended in case of a removal from the county. It will be perceived, however, that those cases are associated with another, namely, "when there is a manifest hazard to the public interest," which necessarily calls for such a declaration, before the office becomes vacant. In some of the cases enumerated, it is obvious that the offices must become vacant without any action by the supreme court, as by death or resignation. In others, a declaration would be necessary as in case of "manifest hazard to the public interest," and insanity, probably; and we are inclined to regard this provision, not as furnishing the only and exclusive method of determining when an office is vacant, but as exclusive only, when from the nature of the case, an inquiry of a judicial character and a declaration of the result were necessary before a vacancy could be said to exist.

In respect to the effect of a removal from the county, it might be plausibly urged that questions of domicil are often intricate and difficult, and that until passed upon by the tribunal designated, the office should not be regarded as vacant. We think, however, that the drift of the cases in New Hampshire, bearing upon this subject, is the other way.

In *Giles* v. *School District*, 31 N. H. 308, it was held, that the office of prudential committee becomes vacant, by the removal of the incumbent from the town—citing *Barre* v. *Greenwich*, 1 Pick. 134. In several settlement cases, when the incumbents of town offices had removed from town before the expiration of the year, it was held that they did not gain settlements, by serving in town offices one year. *Acworth* v. *Lyndeborough*, 2 N. H. 295, where it was held that the removal of the highway surveyor within the year, was *ipso facto*, a resignation of his office.

A similar doctrine was held in *Rumney* v. *Campton*, 10 N. H. 569. In these cases, there was no statute looking to any declaration by the court, but the question of removal was in issue like any other fact.

In *Bartlett* v. *Jenkins*, 22 N. H. 61, the ensign of a military company had removed without the limits of his company, and it was held that it was not necessary to consult him in the appointment of a subordinate, upon the ground that after his removal, he could not properly perform an official act, notwithstanding the provision of the statute was, that if any officer shall remove without such limits to reside, it shall be sufficient cause for an address for his removal from office; and it was urged that the officer had not been removed, but the court hold that it is contrary to the spirit of the law requiring officers to reside within those limits, to permit them to perform all the functions of their rank, after their change of residence. In the petition of Nashua, 12 N. H. 425, before cited, the report of the commissioners was rejected, because one of them was interested, being a citizen of Nashua.

These cases, with the exception of *Butler* v. *Jenkins*, are not directly in point, but they serve to show, that in determining the

validity of acts by persons assuming to be public officers, the courts of this state are accustomed to pass upon the effect of a removal of the officer out of the prescribed limits. In *Butler* v. *Jenkins*, the terms looking to the action of the appropriate tribunal, before the office shall be deemed to be vacant, are stronger than in the case of county commissioners, and yet the authority of the officer removing out of the limits of his company, was held to have ceased, without an address for his removal.

Upon the whole, we think that by the removal of the chairman from the county, his office, *ipso facto*, became vacant, and the others had no power to complete the proceedings, by the making of a report.

We should have been glad, to have found some satisfactory ground on which the report could have been sustained, but have been unable to do so. What remained to be done, was of a substantial character; and should the report now be sustained, it would be difficult to fix any limits beyond which the majority of the board could not go, after the office of one member had become vacant.

It is best, we think, that it be understood that the business must be fully completed, while the board of commissioners is full. That rule, has the advantage of simplicity, and if observed, will avoid much uncertainty and inconvenience.

*Exceptions sustained.*